UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THILO WEISS,

      Plaintiff,

– against –

SHREE BAIDYANATH AYURVED
BHAWAN PVT. LTD.,

      Defendant.

---

**MEMORANDUM & ORDER**

21-cv-00155 (ERK) (JRC)

KORMAN, *J.*:

  Plaintiff Thilo Weiss moves for default judgment against defendant Shree Baidyanath Ayurved Bhawan Pvt. Ltd. ("Baidyanath") on six causes of action for products liability and intentional tort. *See* Mot. for Default J., ECF No. 28 ("Mot."). Weiss seeks to recover damages for severe lead, mercury, and arsenic poisoning he allegedly suffered after ingesting Ayurvedic herbal supplements manufactured by Baidyanath, an Indian company headquartered in Kolkata.

  For the reasons stated below, Weiss has shown that he warrants the discretionary relief of default judgment as to his products liability claims (Counts I through IV) but not as to his intentional tort claims (Counts V and VI), which are barred by the applicable statute of limitations. Accordingly, I refer Weiss's motion to Magistrate Judge Cho for a calculation of damages on Counts I through IV.

## BACKGROUND

During a family visit to India in January 2019, Weiss and his wife attended a fertility consultation with a practitioner of Ayuervedic medicine.[1]  Am. Compl. ¶ 37, ECF No. 7.  On the practitioner's recommendation, Weiss purchased three Ayurvedic supplements manufactured by Baidyanath and took them home with him to Astoria, New York, where he was living at the time.[2]  *Id.* ¶¶ 7, 38–40.  Back in the United States, he began taking the supplements according to the dosage recommendations on Baidyanath's U.S. website.  *Id.* ¶ 40.  Within weeks, Weiss began to experience severe abdominal pain accompanied by an array of symptoms such as bloating, fatigue, shortness of breath, difficulty concentrating, confusion, and forgetfulness.  *Id.* ¶¶ 41–44.  Weiss stopped taking the supplements, but the symptoms persisted.  *Id.* ¶¶ 44–45.

After multiple hospital visits, testing eventually revealed that Weiss's blood contained nearly eight times the amount of lead the CDC considers "high" for adults—the highest level his doctor could recall ever seeing.  *Id.* ¶ 49; Decl. of Ezra Gabbay, M.D. ¶ 11, ECF No. 28-2.  Weiss was admitted to the hospital where he

---

[1] The amended complaint describes "Ayurveda" as "a holistic medical approach that originated on the Indian subcontinent."  Am. Compl. ¶ 2, ECF No. 7.

[2] The supplements Weiss purchased and later consumed were named *Pushpadhanwa Ras*, *Shukramatrika Bati*, and *Manmath Ras*.  Am. Compl. ¶ 38.

endured just over a week of sometimes painful treatment. Am. Compl. ¶ 51–57. He was then discharged with a prescription to continue treating his lead exposure, but he continues to experience fatigue and headaches. *Id.* ¶ 57–58.

Testing by the New York City Department of Health and Mental Hygiene ("NYCDOH") revealed that samples of the Baidyanath supplements Weiss had ingested contained lead, mercury, and arsenic well in excess of permissible limits referenced by the Food and Nutrition Board of the National Academies of Sciences, Engineering and Medicine. *Id.* ¶ 59–61; *see also id.* Ex. A, ECF No. 7-1; Decl. of Rama B. Rao, M.D. ¶ 4, ECF No. 28-3. Indeed, each sample contained tens of thousands of times the permissible limit of at least one of these substances. Am. Compl., Ex. A.

Weiss filed his original complaint on January 12, 2021. *See* Compl., ECF No. 1. He filed an amended complaint on March 22, 2021, pleading claims of (I) strict products liability, (II) negligent products liability, (III) strict liability failure to warn, (IV) negligent failure to warn, (V) battery, and (VI) intentional infliction of emotional distress. Am. Compl., ECF No. 7. The Amended Complaint named Baidyanath and ten individual Baidyanath directors and shareholders as defendants, Am. Compl. ¶ 8–18, but Weiss later voluntarily dismissed all claims against the individual defendants. Not. of Voluntary Dismiss., ECF No. 20.

3

Weiss attempted service on Baidyanath via India's Central Authority pursuant to the Hague Convention.³  Status Rep., ECF No. 19; Ltr., ECF. No. 24.  Several months after submitting his request to the Central Authority, he received a certificate indicating that Baidyanath's office manager had been given the summons and amended complaint, had reviewed both, but refused to accept service.  Ltr., Ex. A, ECF No. 24-1.  On May 16, 2022, pursuant to this Court's order, Weiss instead served Baidyanath by email to the email address Baidyanath submitted to India's Registrar of Companies.⁴  Cert. of Serv., ECF No. 22; Decl. of Chris L. Sprengle ¶ 24, ECF No. 12.

---

³ *See* Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1969, 20 U.S.T. 361 (the "Hague Convention").

⁴ Weiss had initially moved to serve Baidyanath by email but, at Judge Cho's suggestion, withdrew the motion and attempted service pursuant to the Hague Convention.  After submitting the request to India's Central Authority to serve Baidyanath pursuant to the Hague Convention, Weiss waited a month and then renewed his motion to serve Baidyanath by email at Baidyanath's email address and the email address of its legal manager, Shripad Moharil.  Mot. at 10–11; Renewed Mot. for Serv. by Publ'n, ECF No. 21.  Judge Cho granted the motion, and Weiss attempted email service the same day.  Order dated May 16, 2022; Cert. of Serv., ECF No. 22.  Weiss's counsel immediately received a notification of delivery failure in reply to the email to Moharil's address but received no such reply to the email to Baidyanath's address.  ECF No. 22.  Thereafter, Weiss received a certificate and letter from India's Central Authority indicating that Baidyanath's office manager had been provided with the summons and amended complaint, had read it, but refused to accept service.  Mot. at 11 n.3; Ltr., Ex. A, ECF No. 24-1.

4

Baidyanath has not appeared or responded in any way in this proceeding. On September 7, 2022, the Clerk noted an Entry of Default. *See* ECF No. 27. Weiss filed the instant motion on October 7, 2022, *see* ECF No. 28, and served it on Baidyanath by email the same day, *see* Cert. of Serv., ECF No. 29.

## STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure (the "Rules") sets forth a two-step process for plaintiffs to obtain default judgment. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In deciding a motion for default judgment, the court "deems all the well-pleaded allegations in the pleadings to be admitted."[5] *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997). The court will

---

[5] The defaulting defendant is not deemed to admit the amount of damages alleged. Thus, if damages must be determined, the court may conduct an evidentiary hearing or order a reference. *See* Fed. R. Civ. P. 55(b)(2); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

5

grant the motion only if, after "draw[ing] all reasonable inferences in [the plaintiff's] favor," *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009), "the factual allegations, accepted as true, provide a proper basis for liability and relief," *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010). The ultimate decision whether to grant default judgment is committed to the district court's discretion. *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015).

## DISCUSSION

This Court has subject matter jurisdiction because Weiss is a citizen of New Jersey, Baidyanath is a citizen of India, and Weiss alleges damages in excess of $75,000. *See* 28 U.S.C. § 1332(a)(2). As discussed below, Weiss's allegations also provide a proper basis for liability and relief with respect to Counts I through IV of the Amended Complaint, but not Counts V and VI. Moreover, the circumstances of this case warrant the entry of default judgment as matter of discretion. Before turning to the merits of Weiss's claims, I briefly address the issue of personal jurisdiction.

I. *Personal Jurisdiction*

Before granting a motion for default judgment, a court "may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). Several Circuits *require* a district court to do so before entering default judgment against a non-appearing

6

defendant. *See Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) ("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant."); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."); *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (same); *Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 712 (9th Cir. 1999) ("A judgment entered without personal jurisdiction over the parties is void. To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." (citations omitted)).

The Second Circuit, however, has not imposed such a requirement. In this Circuit, a district court may, but is not required to, analyze personal jurisdiction *sua sponte* before granting default judgment. *Sinoying Logistics Pte Ltd.*, 619 F.3d at 213 n.7 ("We need not—and explicitly do not—address here whether a district court *must* investigate its personal jurisdiction over defendant before entering a default judgment."); *see also Mickalis Pawn Shop, LLC*, 645 F.3d at 133. If a court declines to conduct such an inquiry, the party against whom default judgment is entered does not lose the ability to contest personal jurisdiction because a judgment entered

7

without jurisdiction may be challenged as void under Rule 60(b)(4), *see "R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123 (2d Cir. 2008), or via a direct appeal, *see Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001) (explaining that a defendant may directly appeal default judgment without moving to vacate under Rule 60(b)). To head off such a challenge, some courts in this Circuit have undertaken the inquiry at the outset, particularly where the plaintiff's submissions make clear that jurisdiction is lacking. *See, e.g., Yao Wu v. BDK DSD*, No. 14-CV-5402, 2015 WL 5664256, at *2 (E.D.N.Y. Aug. 31, 2015), *report and recommendation adopted*, 2015 WL 5664534 (Sept. 22, 2015); *see also Bross Utilities Serv. Corp. v. Aboubshait*, 489 F. Supp. 1366, 1368 n.3 (D. Conn. 1980) ("The entry of default judgment is a matter committed to the discretion of the court, and the susceptibility of such a judgment to subsequent attack is a factor to be considered in determining whether judgment should be entered."). Other courts, however, have declined to conduct the inquiry where personal jurisdiction is "close or unsettled," *see Kaplan v. Hezbollah*, No. 19-cv-3187 (BMC), 2022 WL 2207263, at *3 (E.D.N.Y. June 21, 2022), or where judicial resources are likely preserved by forestalling the inquiry and where the relief sought warrants quick resolution, *see CKR Law LLP v. Anderson Invs. Int'l, LLC*, 544 F. Supp. 3d 474, 479–80 (S.D.N.Y. 2021) ("By waiting until a party actually contests personal jurisdiction, a court ensures that it will resolve only those issues that are properly presented.").

8

I find the approach taken by this Court in *Kaplan* persuasive: If personal jurisdiction is clearly lacking, the court should address the issue and not enter a default judgment that is likely never to be enforced. *See* 2022 WL 2207263, at *2. But if, instead, personal jurisdiction is "close or unsettled," a plaintiff moving for default judgment should not be prejudiced by the defendant's decision not to appear. *Id.* at *3. A defendant's failure to appear, even for the sole purpose of challenging personal jurisdiction, forecloses procedures that would otherwise be available to better inform the jurisdictional inquiry, such as conducting an evidentiary hearing or ordering discovery on the issue of personal jurisdiction. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (listing procedures available to aid the court in determining personal jurisdiction). Thus, if the plaintiff's submissions raise a reasonable inference that such procedures might uncover a basis for personal jurisdiction, a court's insistence on resolving the issue before entering default judgment makes the plaintiff worse off *as a result of* the defendant's refusal to participate. In such cases, deferring a full-blown personal jurisdiction inquiry until the defendant comes forward to contest the issue avoids such unfairness and preserves judicial resources.

In this case, it is plausible that discovery could reveal a basis for personal jurisdiction over Baidyanath. Personal jurisdiction requires procedurally proper service of process, a statutory basis for personal jurisdiction, and consistency with

9

due process. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012). Without deciding whether any of these elements are met here, I conclude that considerations of fairness and preservation of judicial resources counsel in favor of exercising the Court's discretion not to inquire into personal jurisdiction at this juncture. Without Baidyanath's participation, it is impossible to know the extent to which Baidyanath has serviced the New York market or derived revenue from the sale of its supplements here. Such information is peculiarly under Baidyanath's control and potentially bears on both the existence of statutory personal jurisdiction and the due process analysis. *See* C.P.L.R. 302(a)(3)(i) (creating jurisdiction over any nondomiciliary that causes in-state injury via out-of-state tortious conduct and "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state"); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 355 (2021) ("When a [defendant] serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit."). Weiss alleges that Baidyanath's products are sold in New York retail stores and via the internet to New York customers. Am. Compl. ¶ 22, ECF No. No. 7. Discovery might reveal whether these contacts are sufficiently persistent and extensive to satisfy the statutory and due process requirements for haling Baidyanath into court in New York.

Without Baidyanath's participation, I decline to *sua sponte* inquire into the court's personal jurisdiction and, instead, proceed to consider whether Weiss's amended complaint alleges a proper basis for relief.

II. *Merits*

Weiss's amended complaint states claims for strict products liability, negligent products liability, strict liability failure to warn, and negligent failure to warn. However, New York's one-year statute of limitations for intentional torts bars Weiss's battery and intentional infliction of emotional distress claims. *See* C.P.L.R. 215(3). Accordingly, I conclude that Weiss is not entitled to default judgment on Counts V and VI and proceed to consider whether default judgment is warranted as a matter of discretion on Counts I through IV.

A. *Products Liability Claims*

Under New York law, "[a] manufacturer who places a defective product into the stream of commerce may be liable for injuries or damages caused by such product." *Mangano v. Town of Babylon*, 975 N.Y.S.2d 130, 131 (N.Y. App. Div., 2d Dep't 2013). "[T]o prevail in a products liability action, the plaintiff need only prove (1) that the product was defective, and (2) that the defect was a substantial factor in bringing about the injury." *Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, 419 F. Supp. 3d 490, 506 (E.D.N.Y. 2019) (citation and internal quotation marks omitted).

11

A plaintiff may satisfy the first factor by showing either a design defect, a manufacturing defect, or a failure to warn. *Id.* (citing *Dummitt v. Chesterton (In re New York City Asbestos Litig.)*, 59 N.E.3d 458, 469 (N.Y. 2016)). Weiss has moved for default judgment on theories of design defect and failure to warn. Mot. at 14–17, ECF No. 28-1.

Weiss's products liability claims—Counts I through IV—are timely under the applicable three-year statute of limitations. *See* C.P.L.R. 214, 214-c.

i. *Design Defect*

Claims for strict liability design defect and negligent design are "functionally synonymous" under New York law. *Adams v. Genie Indus., Inc.*, 929 N.E.2d 380, 384 (N.Y. 2010). In either case, the plaintiff proves a design defect by showing that, "at the time [the product] le[ft] the seller's hands, [it was] in a condition not reasonably contemplated by the ultimate consumer and [was] unreasonably dangerous for its intended use." *Voss v. Black & Decker Mfg. Co.*, 450 N.E.2d 204, 207 (N.Y. 1983) (citation omitted); *see also Adams*, 929 N.E.2d at 384 (holding that the *Voss* standards apply to both strict liability and negligent design defect claims).

To determine whether a product is "unreasonably dangerous," courts weigh certain "risk-utility factors." *Giunta v. Delta Int'l Mach.*, 751 N.Y.S.2d 512, 515 (N.Y. App. Div., 2d Dep't 2002). These include "the likelihood that the product will cause injury, the ability of the plaintiff to have avoided injury, the plaintiff's

12

awareness of the product's dangers, the usefulness of the product as designed as compared to a safer design, the functional and monetary cost of using the alternative design, and the likely effect of liability for failure to adopt the alternative design on the range of consumer choice among products." *Id.*

The plaintiff must finally "show that the design defect was a proximate cause of [his or her] injuries." *Doomes v. Best Transit Corp.*, 958 N.E.2d 1183, 1191 (N.Y. 2011).

Weiss's allegations state prima facie claims for negligent and strict liability design defect. Weiss alleges that the supplements he ingested contained lethal doses of lead, mercury, and arsenic when they left Baidyanath's hands—a condition Weiss could not reasonably have contemplated given the lack of warning. Am. Compl. ¶¶ 39, 70–71. Weiss further alleges he became ill as a result of taking them, which is supported by NYCDOH's subsequent testing that revealed the presence of dangerous levels of heavy metals. *Id.* ¶¶ 59–62. Applying the risk-utility factors, supplements containing unsafe levels of lead, arsenic, and mercury are without a doubt unreasonably dangerous for their intended use of being ingested. Whether or not Baidyanath might have rebutted these well-pleaded allegations had it participated, it has failed to do so and is therefore deemed to have admitted them. *See Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 108. Weiss's uncontested allegations state an adequate basis for relief for negligent and strict liability design defect.

13

### ii. *Failure to Warn*

Like design defect, "failure-to-warn claims grounded in strict liability and negligence are functionally equivalent." *In re New York City Asbestos Litig.*, 59 N.E.3d at 469. To prevail on a failure to warn theory, the plaintiff must establish that the defendant had a duty to warn the plaintiff of a product's danger. *Id.* In general, "[a] manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." *Liriano v. Hobart Corp.*, 700 N.E.2d 303, 305 (N.Y. 1998). The plaintiff must also prove that the defendant's failure to warn was "a substantial cause of the events which produced the injury." *Reece v. J.D. Posillico, Inc.*, 83 N.Y.S.3d 672, 676 (N.Y. App. Div., 2d Dep't 2018) (citation omitted).

The amended complaint properly alleges a claim for failure to warn. The presence of heavy metals in Baidyanath's supplements was not readily observable and posed a latent danger arising from the product's intended use of being ingested. *See Liriano*, 700 N.E.2d at 305. Baidyanath therefore had a duty to warn consumers about the heavy metals in these products. *Id.* Weiss alleges that neither the supplements' packaging nor Baidyanath's website warned of the presence of unsafe levels of mercury, lead, or arsenic, and that Weiss "believed these products were safe." Am. Compl. ¶¶ 38–39. Weiss therefore adequately alleges that his injuries

14

were proximately caused by Baidyanath's failure to warn. *See* Am. Compl. ¶¶ 85, 92.

In sum, Weiss's amended complaint adequately states claims for strict products liability, negligent products liability, strict liability failure to warn, and negligent failure to warn (Counts I through IV).

### B. *Intentional Torts*

Weiss's claims for battery and intentional infliction of emotional distress, however, are untimely under the applicable one-year statute of limitations. *See* C.P.L.R. 215(3).

#### i. *Battery*

Federal courts sitting in diversity apply state law statutes of limitations to state law claims. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 745 (1980) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945)). New York's statute of limitations for battery is one year and runs from the time of the nonconsensual physical contact. C.P.L.R. 215(3); *see also Plaza v. Est. of Wisser*, 626 N.Y.S.2d 446, 451 (N.Y. App. Div., 1st Dep't 1995) (battery claim arising from HIV exposure accrued at time of physical contact, not the time of discovery pursuant to C.P.L.R. 214-c); *Corcoran v. New York Power Auth.*, 202 F.3d 530, 542 (2d Cir. 1999) (claim accrued at time plaintiff's father was exposed to radiation in the workplace). Because Weiss stopped

taking the supplements by the end of March 2019, *see* Am. Compl. ¶ 44, but did not commence this action until January 2021, his battery claim is untimely.

### ii. *Intentional Infliction of Emotional Distress*

Weiss's intentional infliction of emotional distress claim is also untimely. "It is well established that the one-year statute of limitations set forth in CPLR § 215(3) for intentional torts is applicable to claims for intentional infliction of emotional distress." *Mariani v. Consol. Edison Co. of New York, Inc.*, 982 F. Supp. 267, 273 (S.D.N.Y. 1997); *see also Weisman v. Weisman*, 485 N.Y.S.2d 570, 570–71 (N.Y. App. Div., 2d Dep't 1985) (one-year statute of limitations applies to intentional infliction of emotional distress claims). Since any conduct giving rise to Weiss's intentional infliction of emotional distress claim occurred at least before the end of March 2019, and this action commenced in January 2021, Weiss's intentional infliction of emotional distress claim is also untimely.

### III. *Discretion*

Having established a basis for liability and relief on his products liability claims, Weiss must still show that the discretionary relief of default judgment is warranted under the circumstances of this case. *See Greathouse*, 784 F.3d at 116. I conclude that it is. Weiss has made substantial efforts to contact Baidyanath and apprise it of this action. These include hiring an investigator to locate the physical and email addresses of Baidyanath and several directors who had been defendants;

16

sending the summons and complaint by FedEx and email to Baidyanath, its legal manager, and those same Baidyanath directors; arranging for India's Central Authority to serve Baidyanath pursuant to the Hague Convention; and, finally, serving Baidyanath by email with the Court's leave. Decl. of Chris L. Sprengle, ECF No. 12; Order of May 16, 2022; Cert. of Serv., ECF No. 22; Ltr., ECF No. 24. Weiss also emailed Baidyanath his request for a certificate of default, *see* Cert. of Serv., ECF No. 26, and this motion, *see* Cert. of Serv., ECF No. 29. Despite these efforts, Baidyanath has not appeared. Indeed, Weiss received a certificate and letter from India's Central Authority stating that Baidyanath's office manager was given the summons and amended complaint, read both, but refused to accept the documents. Ltr., Ex. A, ECF No. 24-1. Taken together with Weiss's uncontested allegations regarding the merits of his claims, I conclude that the discretionary remedy of default judgment is warranted as to Counts I through IV.

17

## CONCLUSION

Default judgment should be entered against Baidyanath with respect to Weiss's products liability claims but not his intentional tort claims. I therefore refer Weiss's motion for default judgment to Judge Cho for a calculation of damages on Counts I through IV only.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York  
April 10, 2024

Edward R. Korman  
United States District Judge